**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO:**

SHARENA CONSERVE,

    Plaintiff,

v.

LINE 5, LLC,

    Defendant
_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, SHARENA CONSERVE ("Plaintiff") pursuant to 29 U.S.C. § 216(b) files the following Complaint for Damages and Demand for Jury Trial against Defendant, LINE 5, LLC (hereafter "Defendant"), and alleges the following:

## INTRODUCTION

1. Defendant unlawfully deprived Plaintiff of overtime compensation during the course of her employment. This action arises under the Fair Labor Standards Act ("FLSA") pursuant to *29 U.S.C. §§ 201–216*, to recover all overtime wages that Defendant refused to pay Plaintiff during the past three (3) years.

## PARTIES

2. During all times material hereto, Plaintiff was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris*.

3. During all times material hereto, Defendant, LINE 5, LLC, was a Florida limited liability company transacting business within Broward County, Florida, within the jurisdiction of this Honorable Court.

4. Defendant, LINE 5, LLC, maintains its headquarters at 5644 Tavilla Ct. Suite 204, Naples, Florida 34110.

5. Defendant, LINE 5, LLC, was Plaintiff's employer, as defined by 29 U.S.C. § 203(d), during all times pertinent to the allegations herein.

6. During all times material hereto, Defendant, LINE 5, LLC was vested with control and decision-making authority over the hiring, firing, day-to-day operations, and pay practices as it pertained to Plaintiff.

## JURISDICTION AND VENUE

7. All acts and/or omissions giving rise to this dispute took place within Broward County, Florida, which falls within the jurisdiction of this Honorable Court.

8. Defendant regularly conducts business in Broward County, Florida, and during certain time periods within the past 3 years operated its business in Broward County. Therefore, jurisdiction is proper within the Southern District of Florida pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

9. Venue is also proper within the Southern District of Florida pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

10. Defendant sells car warranties and partners with automobile dealerships to fully fund vehicle protection plans for automobiles, SUVs, Trucks and more. *See* https://www.line5.com/how-it-works (last visited December 7, 2021).

11. Plaintiff worked for Defendant as a non-exempt, administrative assistant from in or around August 2018 until on or about December 2, 2021.

## FLSA COVERAGE

12. Defendant is covered under the FLSA through enterprise coverage, as Defendant was engaged in interstate commerce during all pertinent times in which Plaintiff was employed. More specifically, Defendant engaged in interstate commerce by virtue of the fact that its business activities involved those to which the FLSA applies. Defendant's business and Plaintiff's work for Defendant affected interstate commerce because the goods and materials that Plaintiff used on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same.

13. During her employment with Defendant, Plaintiff, and various other employees handled and worked with various goods and/or materials that moved through interstate commerce, including, but not limited to the following: telephones, pens, notepads, computers, cellular telephones, computer mice, keyboards, extension cables, scissors, highlighters, tape, notepads, paper, staples, staplers, permanent markers, folders, calendars, planners, schedules, binders, notebooks paperclips, calculators, sticky notes, erasers, file sorters, computer software, paper towels, boards, easels, etc.

14. Defendant also regularly employed two (2) or more employees for the relevant time period who handled the same or similar goods and materials handled by Plaintiff, or used the instrumentalities of interstate commerce, or the mails, thus making Defendant's business an enterprise covered by the FLSA.

15. Defendant grossed or did business in excess of $500,000.00 during the years of 2018, 2019, 2020, and is expected to gross in excess of $500,000.00 in 2021.

16. Plaintiff's work for all Defendant was actually in, or so closely related to the movement of commerce while she worked for Defendant, that Plaintiff is covered under the FLSA through individual coverage, as Plaintiff regularly and recurrently used the instrumentalities of interstate commerce for her work. More specifically, Plaintiff regularly and recurrently engaged in using the instrumentalities of commerce, including landline telephones, cellular mobile phones, computers and other electronic devices, to send and receive invoices and other verbal and written correspondences across state lines during her employment period with Defendant. Plaintiff also regularly and recurrently held telephone meetings and conversations with Defendant's partners and customers who resided in states other than Florida during her employment period.

17. During all material times hereto, Plaintiff was a non-exempt employee of Defendant, within the meaning of the FLSA.

## PLAINTIFF'S WORK FOR DEFENDANT

18. Plaintiff began working for Defendant as an administrative assistant in or around August 2018.

19. During Plaintiff's employment period, her duties included processing paperwork, uploading contracts, preparing and mailing postage, printing agreements, speaking with customers, and otherwise assisting Defendant's account managers.

20. During her employment with Defendant, Plaintiff (i) performed non-exempt work; (ii) did not have supervisory authority over any individuals; (iii) did not make decisions of substantial importance on behalf of Defendant, and (iv) was not required to possess any advanced training, skill, or prolonged education in order to perform any of her primary duties and responsibilities.

21. Defendant agreed to pay Plaintiff an annual salary of approximately $30,000 per year, plus non-discretionary commissions and bonuses.

22. Plaintiff worked an average of forty-five (45) hours per week from August 2018 until in or around May 2020, when Plaintiff went on maternity leave.

23. However, Defendant did not pay Plaintiff overtime wages when she worked in excess of forty (40) hours per week between August 2018 and May 2020.

24. When Plaintiff returned to work in or around August 2020, Defendant demoted her to a customer service position. For this work, Defendant paid Plaintiff an annual salary of $27,000.00 per year, plus non-discretionary bonuses and commissions. Plaintiff continued working as a customer service representative until in or around January 2021. Although Plaintiff regularly worked approximately forty-five (45) hours per week as a customer service representative, Defendant refused to pay Plaintiff overtime wages when she worked more than forty (40) hours in a workweek.

25. In or around January 2021, Defendant changed Plaintiff's job title back to "administrative assistant." Defendant paid Plaintiff an annual salary of $34,000 per year as an administrative assistant in 2021, plus non-discretionary commissions and bonuses.

26. However, in or around May 2021, Defendant changed Plaintiff's pay structure from a salary to an hourly wage.

27. Beginning in or around May 2021, Plaintiff earned $16.25 per hour.

28. As an hourly employee, Defendant automatically deducted thirty (30) minutes per day from Plaintiff for a "meal period."

29. Defendant did not require Plaintiff to clock-out for her meal period and did not otherwise record when (if ever) Plaintiff was relieved of her duties for the purposes of having a meal.

30. Plaintiff regularly was required to work through her meal period and was not completely relieved of her duties for a meal, notwithstanding Defendant's automatic 30-minute deduction from Plaintiff each day for a meal period. This resulted in Plaintiff working in excess of 40-hours in certain workweeks and not being fully compensated the appropriate overtime premium for all of the hours worked.

31. Defendant was aware of the work Plaintiff performed during her meal period at all times material hereto.

32. Furthermore, Defendant continued to pay Plaintiff non-discretionary bonuses and commissions in addition to her hourly wages after she became an hourly employee in or around May 2021.

33. Nevertheless, Defendant failed to include Plaintiff's non-discretionary bonuses and commissions to properly calculate Plaintiff's overtime wage rate in weeks when she earned bonuses/commissions and worked in excess of forty (40) hours.

34. As a result of Defendant's intentional and willful failure to comply with the FLSA, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of these claims.

**COUNT I – FEDERAL OVERTIME WAGE VIOLATIONS – 29 U.S.C. § 207**

35. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 34 as though set forth fully herein.

36. Plaintiff alleges this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

37. Defendant refused to pay Plaintiff one-and-one-half times her regular hourly rate for some hours of work over forty (40) in one or more weeks of her employment.

38. Defendant automatically deducted 30-minutes per day from Plaintiff for a meal period which she was not able to take, including during workweeks when Plaintiff worked over forty (40) hours and was was paid on an hourly basis.

39. In addition, Defendant failed to include Plaintiff's non-discretionary bonuses and commissions to properly calculate Plaintiff's proper overtime wage rate in weeks when she earned commissions and worked in excess of forty (40) hours.

40. Plaintiff therefore claims the applicable federal overtime wage rate for all weekly hours worked over forty (40) during her employment period.

41. Defendant willfully and intentionally refused to pay Plaintiff the applicable federal overtime wages as required by the FLSA, as Defendant knew or should have known of the FLSA's overtime wage requirements.

42. Accordingly, the statute of limitations in this action should be three (3) years as opposed to two (2) years.

43. Defendant's willful and/or intentional violations of federal wage law entitle Plaintiff to an additional amount of liquidated, or double, damages.

44. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, SHARENA CONSERVE, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, LINE 5, LLC, and award

Plaintiff: (a) unliquidated damages; (b) liquidated damages; (c) reasonable attorney's fees and costs; and any and all such further relief as may be deemed just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, SHARENA CONSERVE, requests and demands a trial by jury on all appropriate claims.

**Dated this 9th day of December 2021.**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-**
**JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
JAKE BLUMSTEIN, ESQUIRE
Florida Bar No. 1017746
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on December 9, 2021.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST: